UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 2:17-CR-471 |
| | § | |
| JOSE L DELUNA III; aka DELUNA; aka | § | |
| DE LUNA | § | |

## ORDER ON MOTION TO SUPPRESS

Defendant Jose L. DeLuna, III, is charged with one count of conspiracy to possess with intent to distribute more than 100 grams of a mixture or substance containing heroin. Before the Court is his motion to suppress (D.E. 20). Arresting officers found paraphernalia related to possession and distribution of controlled substances when they searched DeLuna's alleged residence pursuant to a warrant issued by a Magistrate Judge. DeLuna now asks the Court to suppress that evidence, along with any incriminating statements he made during that search. For the following reasons, the Court DENIES DeLuna's motion to suppress.

### DISCUSSION

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. The customary remedy for a violation of the Fourth Amendment is to exclude the illegally-obtained evidence from trial. *Mapp v. Ohio*, 367

U.S. 643, 655 (1961).  The "sole purpose" of the exclusionary rule, however, is "to deter future Fourth Amendment violations."  *Davis v. United States*, 564 U.S. 229, 236–37 (2011).  For that reason, the Supreme Court has recognized a "good faith exception" to the exclusionary rule, which allows the introduction of evidence seized by an officer in good-faith reliance on a search warrant, even if the warrant itself later proves inadequate.  *See United States v. Leon*, 468 U.S. 897, 926 (1984).  "Under the good-faith exception, evidence obtained during the execution of a warrant later determined to be deficient is admissible nonetheless, so long as the executing officers' reliance on the warrant was objectively reasonable and in good faith."  *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003).

The Fifth Circuit employs a two-step process to evaluate a motion to suppress the fruits of a search conducted pursuant to a warrant.  *See United States v. Massi*, 761 F.3d 512, 525 (5th Cir. 2014).  First, the Court considers whether the good faith exception applies; if it does, "'the court need not reach the question of probable cause.'"  *Id.* (quoting *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1130 (5th Cir. 1997)); *see also United States v. Moore*, 805 F.3d 590, 593 (5th Cir. 2015) ("Our analysis usually ends if the good faith exception applies.").[1]  The second step of the analysis, which is necessary if the good faith exception does not apply, "requires the court 'to ensure that the

---

[1]  An exception is where the question of probable cause "presents a 'novel question of law,' resolution of which is 'necessary to guide future action by law enforcement officers and magistrates.'"  *Payne*, 341 F.3d at 399 (quoting *Pena-Rodriguez*, 110 F.3d at 1130 n.10).  If such a novel question of law is present, the Court should "proceed directly to the probable cause inquiry."  *United States v. Gallegos*, 239 Fed. App'x 890, 893 (5th Cir. 2007).  DeLuna has not suggested any such legal issue, and the Court does not discern one independently.  Consequently, there is no novel question that requires further analysis.

magistrate had a substantial basis for . . . concluding that probable cause existed.'"

*Massi*, 761 F.3d at 525 (quoting *Pena-Rodriguez*, 110 F.3d at 1129).

## A. Over-Arching Standard of Review

To decide whether the good faith exception applies, the Court need not "attempt an 'expedition into the minds of police officers' to determine their subjective belief regarding the validity of the warrant." *Payne*, 341 F.3d at 400 (quoting *Leon*, 468 U.S. at 922 n.23). Instead the Court's "inquiry is 'confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *Id.* (quoting *Leon*, 468 U.S. at 922 n.23).

Courts have identified four circumstances when the good faith exception will not apply:

> (1) when the issuing magistrate was misled by information in an affidavit that the affiant knew or reasonably should have known was false; (2) when the issuing magistrate wholly abandoned his judicial role; (3) when the warrant affidavit is so lacking in indicia of probable cause as to render official belief in its existence unreasonable; and (4) when the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that executing officers cannot reasonably presume it to be valid.

*United States v. Woerner*, 709 F.3d 527, 533–34 (5th Cir. 2013) (citing *Payne*, 341 F.3d at 399–400). Here, DeLuna relies exclusively on the third exception. He challenges the "indicia of probable cause" found in the affidavit accompanying the warrant application.

**B. There is Sufficient Indicia of Probable Cause**

**1. The Probable Cause Standard**

"'[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.'" *Massi*, 761 F.3d at 524 (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). "A magistrate's determination of probable cause is entitled to great deference by reviewing courts." *United States v. Allen*, 625 F.3d 830, 840 (5th Cir. 2010) (citing *Gates*, 462 U.S. at 216 & n.10). "[T]he task of a magistrate signing a search warrant is simply to make a 'practical common-sense decision as to whether, given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* (quoting *United States v. Froman*, 355 F.3d 882, 889 (5th Cir. 2004)).

"When a warrant is supported by more than a 'bare bones' affidavit, officers may rely in good faith on the warrant's validity." *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992). "'Bare bones' affidavits contain wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *Id.*; *see also United States v. Norsworthy*, 654 F. Supp. 2d 581, 590 (S.D. Tex. 2009) ("[A]n affidavit is insufficient if it simply includes something analogous to the phrase: affiant has cause to suspect and reason to believe that contraband is located on the premises.").

## 2. Supporting Facts

The parties waived an evidentiary hearing, so the Court's review is appropriately limited to the matters appearing on the face of the warrant and its supporting materials. *See* Warrant and Affidavit, D.E. 20, pp. 8–31; *cf. United States v. Sibley*, 448 F.3d 754, 758–59 (5th Cir. 2006) (district court did not err by denying suppression motion without an evidentiary hearing, as officer affidavit was sufficient to determine that good faith exception applied).

The warrant application relied on an affidavit from David Tyler, a Task Force Officer for the Drug Enforcement Administration[2]. In it, Tyler states that on September 29, 2016, he and another agent met with a confidential informant who, when shown a photograph of DeLuna, identified him as "Joe Wolf."[3] The informant also identified a cell phone number used by "Joe Wolf" and said that "Joe Wolf" resided at 1625 Cambridge Street,[4] Corpus Christi, Texas.

Tyler's affidavit next avers that agents conducted surveillance of DeLuna "at his residence located at 1625 Cambridge Street," where they observed two vehicles parked outside that were both "operated by" DeLuna. The affidavit also provides that DeLuna

---

[2] The affidavit provided as part of Exhibit A to the motion to suppress is not signed. However, at a hearing on October 5, 2017, the parties stipulated that the original affidavit was signed by Officer Tyler.

[3] Although the indictment states DeLuna's first name as "Jose," Tyler's affidavit and DeLuna's own moving papers refer to him as "Joe DeLuna."

[4] The Court notes that Tyler's affidavit refers to "Cambridge Street," rather than "Cambridge Drive" as it appears in DeLuna's motion papers and the warrant itself. The Court does not consider the discrepancy between Cambridge "Street" and Cambridge "Drive" to be of any significance as to the application of the good faith exception. *See United States v. Hall*, 654 Fed. App'x 653, 658 (5th Cir. 2016) ("[W]e conclude that the technical errors in the address do not prevent application of the good-faith exception."), *cert. denied*, 137 S. Ct. 518 (2016).

"routinely departs his residence at all times of the day and night" and used counter surveillance measures to hamper police surveillance.

Tyler's affidavit continues by describing three controlled drug buys allegedly involving DeLuna. The affidavit states that these purchases, which were conducted by undercover agents on November 1, 2016, January 12, 2017, and March 21, 2017, respectively netted 23.19 grams, 52.0 grams, and 49.93 grams of black tar heroin.

Finally, Tyler's affidavit states that on July 25, 2017, he and another agent searched the trash can that was placed on the street for collection outside 1625 Cambridge Drive. That search revealed various items purportedly relating to the sale of narcotics, including: (1) plastic zip lock bags, of the type "used to package narcotics in small amounts" for sale; (2) an empty 2.4 kilogram "container of 'Multi Species milk replacer' containing 'Lactobacillus' which is used to increase the amount of heroin to sell"; and (3) "[a] large amount of clear plastic sandwich bags with both bottom corners cut out," which are allegedly "[u]sed to store large amounts [of] narcotics" for sale.

Two days after the trash pull, the Magistrate Judge issued a warrant to search the house at 1625 Cambridge Drive for, among other things, any illegal drugs, proceeds of drug activity, and firearms or ammunition. The warrant was executed on July 31, 2017. According to a post-search inventory, the search produced a gun, ammunition, $1,851 in cash, and approximately 94.32 grams of black tar heroin. D.E. 20, p. 31. DeLuna, who was present and under arrest during the search, purportedly acknowledged during the search that "he had the gun for protection of the drugs." *Id*. at 2.

### 3. Sufficient Indicia of Probable Cause

The Court holds that the Tyler affidavit provides sufficient indicia of probable cause that the executing officers could reasonably rely on the associated search warrant. The affidavit describes a nearly year-long investigation into DeLuna's alleged involvement in narcotics sales and details multiple incidents when DeLuna was observed by law enforcement participating in illegal activity. Moreover, shortly before applying for the search warrant, law enforcement found materials associated with narcotics sales in the garbage outside 1625 Cambridge Drive. Under the circumstances, an executing officer could reasonably rely on the Magistrate Judge's finding of probable cause. This finding requires application of the good faith exception.

DeLuna challenges the warrant's issuance on the grounds that the Tyler affidavit does not (1) sufficiently establish the confidential informant's credibility; (2) specify the time period of the surveillance of 1625 Cambridge Drive; (3) "establish that the residence targeted is the defendant's residence"; or (4) allege "recent continuing illegal conduct," thereby rendering stale whatever probable cause may have existed. D.E. 20, pp. 2–3.

None of these arguments has any merit. With regard to the confidential informant's credibility, it may be assessed by "examin[ing] the informant's veracity and basis of knowledge." *Satterwhite*, 980 F.2d at 321 (citing *Gates*, 462 U.S. at 230–33). The affidavit does not state the confidential informant's basis of knowledge or law enforcement's appraisal of the informant's reliability. However, law enforcement confirmed the veracity of the informant's tip by surveilling 1625 Cambridge Drive and observing that DeLuna resided there. *See Gates*, 462 U.S. at 241 ("Our decisions

applying the totality-of-the-circumstances [probable cause] analysis . . . have consistently recognized the value of corroboration of details of an informant's tip by independent police work."). Tyler's affidavit also asserts that DeLuna was difficult to tail because he "routinely departs his residence at all times of the day and night," indicating repeated surveillance at varied times of day and night. Viewing the affidavit as a whole, it is clear that law enforcement reasonably concluded based on police surveillance that DeLuna resided at 1625 Cambridge Drive. As for the fact that the affidavit does not specify the time period of the surveillance, the Court does not consider that omission to reduce Tyler's affidavit to a "bare bones" affidavit precluding the good faith exception.

The affidavit also provides a sufficient "nexus between the house to be searched and the evidence sought." *See United States v. Broussard*, 80 F.3d 1025, 1034 (5th Cir. 1996). Tyler's affidavit notes as a general matter that it is common for contraband and proceeds of drug sales to be kept in residences, and that persons involved in drug trafficking frequently have drugs, guns, and currency in their possession. The presence of materials related to the sale of narcotics in the garbage can left outside 1625 Cambridge Drive further indicated that evidence or contraband might be inside.[5] The trash pull thus furnishes the nexus between law enforcement's observation of DeLuna participating in controlled buys and probable cause to believe that contraband or evidence might be found inside 1625 Cambridge Drive. *See Broussard*, 80 F.3d at 1034 (nexus between residence to be searched and evidence to be sought "may be established . . . through normal inferences as to where the articles sought would be located"); *see also*

---

[5] DeLuna does not challenge the constitutionality of the trash pull. *See California v. Greenwood*, 486 U.S. 35, 40 (1988).

*Payne*, 341 F.3d at 401 ("'[F]ew places are more convenient than one's residence for use in planning criminal activities and hiding fruits of a crime.'" (quoting *United States v. Green*, 634 F.2d 222, 226 (5th Cir. Unit B 1981))); *Moore*, 805 F.3d at 595 (drug paraphernalia found in trash 72 hours before warrant issued was one fact "corroborat[ing] the belief that [defendant] was engaged in criminal activity at his residence").

Finally, DeLuna's "staleness" allegation fails. To prevail on this claim, DeLuna must show that "'the facts alleged in the affidavit were so dated that no reasonable officer could have believed that the affidavit established probable cause.'" *Gallegos*, 239 Fed. App'x at 896 (quoting *Pena-Rodriguez*, 110 F.3d at 1130). Here, the three controlled buys, along with the trash pull shortly before the warrant application, suggested a sustained, ongoing pattern of criminal activity. Any lapse in time was not so prolonged that a reasonable officer would have considered the affidavit's allegations to have gone stale. *See United States v. Rodriguez*, 551 Fed. App'x 164, 167 (5th Cir. 2014) ("[T]he fact that the trash can and the baggies contained therein may have been on the curb for several days does not preclude a reasonably objective officer from concluding in good-faith that it was probable that the items sought . . . were still in the Residence."); *United States v. Craig*, 861 F.2d 818, 822–23 (5th Cir. 1988) ("[I]f 'the information of the affidavit clearly shows a long-standing, ongoing pattern of criminal activity, even if fairly long periods of time have lapsed between the information and issuance of the warrant, the information need not be regarded as stale.'" (quoting *United States v. Webster*, 734 F.2d 1048, 1056 (5th Cir. 1984))).

The cases DeLuna cites are all unavailing. *Kohler v. Englade*, 470 F.3d 1104 (5th Cir. 2006), for example, concerned anonymous tips regarding a supposed serial killer that were never sufficiently corroborated to link the suspect with the crimes. *Id.* at 1110–11. Here, the informant's tip regarding DeLuna's residence was corroborated by subsequent police activity. The Tyler affidavit also supplies the exact dates for the informant interview, each of the controlled buys, and the garbage can search. For that reason, this case is distinguishable from *United States v. Hython*, 443 F.3d 480 (6th Cir. 2006), where the challenged affidavit "offer[ed] no clue" as to when probable cause might have existed because it did not specify any dates when criminal activity had allegedly occurred. *Id.* at 486. As for *United States v. Doyle*, 650 F.3d 460 (4th Cir. 2011), that case concerned a defective search warrant to search for child pornography, where the affidavit submitted with the warrant application primarily contained allegations of child sexual assault. *Id.* at 472. That is not the case here, where all of the investigative activity points to trafficking of heroin. Finally, *United States v. Button*, 653 F.2d 319 (8th Cir. 1981), predates *Leon* and is wholly inapposite.

In sum, the Court finds that the affidavit at issue was not so lacking in indicia of probable cause that no officer reasonably could have relied on the search warrant.[6] As the good faith exception applies, the Court need not reach the second stage of the analysis and consider whether the Magistrate Judge had a substantial basis for issuing the warrant.

---

[6] DeLuna also requests suppression of his statements made during the search, but he does not identify any grounds for suppression other than that the warrant was purportedly issued without probable cause. Therefore, the application of the good faith exception will permit introduction of these statements unless DeLuna shows some other cause for suppression. *See Sibley*, 448 F.3d at 755 (application of good faith exception permitted introduction of statements made during search pursuant to warrant).

**CONCLUSION**

For the reasons set forth above, Defendants' motion to suppress (D.E. 20) is

DENIED.

ORDERED this 24th day of October, 2017.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE